581 So.2d 178 (1991)
JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY and Edward R. Dooley, Appellants,
v.
Clifford I. ZALAY, Appellee.
No. 89-03236.
District Court of Appeal of Florida, Second District.
March 20, 1991.
As Modified on Grant of Motion for Clarification July 3, 1991.
*179 Raymond T. Elligett, Jr. and Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, and William A. Gillen, Jr. of Shackleford, Farrior, Stallings & Evans, Tampa, for appellant John Hancock Mut. Life Ins. Co.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Krug, Berman & Silverman, P.A., Miami, for appellee.
RYDER, Acting Chief Judge.
This is the second time that this case has been before this court, and still it is not resolved. John Hancock Mutual Life Insurance Company (Hancock) challenges the jury's verdict which awarded plaintiff, Clifford Zalay (Zalay) one million dollars for compensatory damages and twenty-five million in punitive damages in this libel and slander action. Hancock raises five points on appeal. Our determination that the trial court erred by not instructing the jury that Hancock had a qualified privilege and by incorrectly instructing the jury on the standard of express malice makes the other three issues raised by Hancock moot.[1] The facts involved in this cause of action have been set out fully in John Hancock Mut. Life Ins. Co. v. Zalay, 522 So.2d 944 (Fla. 2d DCA), review denied, 531 So.2d 169 (Fla. 1988) (Hancock I). Therefore, we will only discuss those facts that pertain to the errors committed by the trial court.
Hancock first contends that the trial court erred in not recognizing that the communication upon which this litigation was based should have been considered privileged as a matter of law. We agree. One of Hancock's defenses in this action has been that it had a qualified privilege, as a matter of law, to talk to its policyholders regarding the policies that Zalay had sold to them. Where the circumstances and content of allegedly defamatory statements are undisputed, or are clear under the evidence, the question of whether a qualified privilege existed is a question of law. Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906); Nodar v. Galbreath, 462 So.2d 803 (Fla. 1984).
There are many occasions recognized under common law as being privileged. Statements made by an employer or to an employer regarding an employee's or former employee's performance have long been recognized as a privileged occasion. Additionally, communications made for bona fide commercial purposes where the interest to be protected is the recipient's; and, in business matters where both parties have a corresponding interest in the matter are also recognized as privileged occasions. See 19 Fla.Jur.2d Defamation and Privacy §§ 58-61, 75, 77 (1980). These occasions are based on the premise that:
A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and *180 though the duty is not a legal one but only a moral or social obligation.
19 Fla.Jur.2d Defamation and Privacy § 58 (1980). See Abraham, 52 Fla. at 155, 42 So. at 592.
Shortly before the communications at issue in this case, the legislature adopted statutory provisions to regulate unfair methods of competition and unfair and deceptive acts within the field of insurance. Ch. 76-260, § 9 Laws of Fla. Among other requirements, this enactment made it an unfair insurance practice for an insurance company to frequently misrepresent the "advantages" or the "dividends" associated with the company's insurance policies. § 626.9541(1), Fla. Stat. (1977). An insurance company cannot monitor its own compliance with these requirements without occasionally discussing the performance of its agents and their employees with the insureds. Therefore, we believe that Hancock, as a matter of law, had a qualified privilege to speak to its policyholders regarding the policies that Zalay had sold them. The mode, manner, or purpose of the communication would go to the question of abuse or forfeiture of the privilege, not to the question of existence of the privilege. Nodar, 462 So.2d at 809. Accordingly, the trial court erred in submitting the question of privilege to the jury.
Next, once a legal determination has been made that the statements were privileged, the question that the jury needs to address is whether the defendant abused or forfeited that privilege. The jury must determine whether the statements were made with express malice  that is, they were made for an improper purpose. In order to eliminate the presumption of good faith, the plaintiff must show that the defendant's statements were made with the primary motive of injuring the plaintiff. Nodar, 462 So.2d at 806. Accordingly, Hancock argues, and we agree, that the trial court did not properly instruct the jury regarding the definition of express malice. The court gave the following instruction:
It is malicious to make a false statement concerning another with knowledge of its falsity or to make such a statement recklessly and without regard for its truth or falsity or to make a statement concerning another for the primary purpose of injuring the other. (Emphasis added.)
This instruction is contrary to the law regarding what the plaintiff must show to overcome the presumption of good faith. The court is allowing the jury to make its decision on any one of the three elements listed in the instruction.
First, the instruction above allows the jury to find that Hancock acted with express malice if it found that Hancock knew the statements to be false. "Express malice cannot be inferred from the mere fact that the statements were untrue." Coogler v. Rhodes, 38 Fla. 240, 249, 21 So. 109, 112 (1897). When the motivation to harm the plaintiff is the purpose of the communication, instead of a desire to protect a proper interest, then express malice is proven and the privilege is destroyed. Nodar, 462 So.2d at 811.
Second, the instruction allows the jury to find that Hancock forfeited the privilege if it acted in disregard of whether the statements were false. Again, there is no authority for the jury to make their decision on this one element. This element goes to actual malice, not express malice. Nodar, 462 So.2d at 807. Accordingly, we hold that the instruction incorrectly apprised the jury of the grounds on which they could find that the statements were made with express malice.
Although not available to the court below during trial of this matter, we note that the Florida Supreme Court has recently released an opinion approving standard jury instructions for defamation cases. In re Standard Jury Instructions, 575 So.2d 194 (Fla. 1991). These jury instructions track the law regarding actual and express malice and set forth the appropriate definition of each as delineated in Nodar.
We reverse the judgment of compensatory and punitive damages awarded against Hancock. We therefore remand for a new trial the following portions of Count IV of plaintiff's amended complaint: (1) the plaintiff's claim against Hancock for punitive damages for the alleged defamatory statement *181 made by Mr. Dooley to Mr. Blood; and (2) the plaintiff's claim against Hancock for compensatory and punitive damages for the alleged defamatory statements made to Mr. Blood and Mr. Zalay's other clients by Hancock's investigators.
Reversed and remanded.
LEHAN and ALTENBERND, JJ., concur.
NOTES
[1] Although the other issues are moot due to the holding in this appeal, we express some concern that most of the damages awarded in this case arose from Zalay's termination and his inability to obtain another job in the field of insurance. Whether the evidence in this trial was sufficient to connect these damages to the specific acts of alleged libel and slander is a close and difficult question. Since the evidence at a subsequent trial may be different, we decline to address this issue at this time.