**Larry WYLIE, Plaintiff,**

v.

**ARNOLD TRANSPORTATION SERVICES, INC., et al., Defendants.**

**No. 3:05cv183.**

United States District Court, S.D. Ohio, Western Division.

Sept. 25, 2006.

---

Lucas W. Wilder, Dayton, OH, for Plaintiff.

Alison Day Hall, Littler Mendelson PC, Columbus, OH, for Defendants.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 12); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

At the age of 52, Plaintiff began his employment with Defendant Arnold Transportation Services, Inc. ("Defendant"),[1] on September 13, 2004, as a yard jockey in the truck yard of the Elder Beerman Distribution Center located in Fairborn, Ohio.[2] Among other duties, a yard jockey is required to back trucks up to the docks and set them up for delivery. Sharon Fidler ("Fidler"), Plaintiff's supervisor, noticed immediately that he had serious problems backing up trucks and that he was not able to keep up with the required pace of the work in the truck yard. Moreover, given that September through November is the busiest time of the year at the Elder Beerman Distribution Center, Fidler decided that Defendant could not continue to train Plaintiff in the hope that his performance would improve sufficiently to permit him to become an adequate yard jockey. As a consequence, Defendant decided to remove Plaintiff from that position, and Fidler offered him the opportunity of training to become a truck driver for Defendant.

Plaintiff accepted that offer and, on September 20, 2004, he became a trainee for the position of truck driver.[3] As such a trainee, Plaintiff drove with Mark Truitt ("Truitt"), a trainer employed by Defendant. Based upon his observations when he rode with Plaintiff, Truitt concluded that Plaintiff would need to improve in a number of areas, before he could be considered to be a safe driver. Indeed, Truitt stated in a report to his superiors that Plaintiff had problems driving in the proper lane and backing up the truck, and, in

1. In his Complaint, the Plaintiff has also named various John and Jane Does as Defendants. The Court ignores the Jane and John Does, since Plaintiff has failed to request substitution of actual individuals for those fictitious parties.

2. Since this case comes before the Court on Defendant's request for summary judgment, the Court sets forth the facts and circumstances giving rise to this litigation in the manner most favorable to the Plaintiff.

3. While he became a trainee for the position of truck driver, Plaintiff was already a licensed commercial truck driver.

addition, would become visibly nervous and panic when required to drive in traffic. Truitt also reported that Plaintiff refused to drive in large cities. After Truitt had reported his observations to superiors, Defendant decided to terminate Plaintiff as a trainee for a truck driver position, because it concluded he was an unsafe driver. As a consequence, Plaintiff's two-plus weeks as an employee of Defendant ended on October 1, 2004.

On October 7, 2004, an unidentified male called Defendant's office in Jacksonville, Florida, and said that the Plaintiff was going to the Elder Beerman Distribution Center in Fairborn with a gun. As a result of that telephone call, Glenn Guest ("Guest"), Defendant's Director of Corporate Human Relations, informed Defendant's employees at the Distribution Center and in Dayton, management of Elder Beerman and the Fairborn Police Department about the telephone call. The Fairborn Police Department, in turn, informed the Xenia Police Department of the telephone call, since Plaintiff lived in the latter municipality. Guest also telephoned Plaintiff, to tell him about the anonymous telephone call and to warn him not to go to the Elder Beerman facility, since officers from the Fairborn Police Department would be looking for him. Officers from the Xenia Police Department visited Plaintiff, questioning him and his neighbors. Plaintiff told Guest and those officers that he did not know who had made the telephone call and denied that he was going to the Elder Beerman Distribution Center with a gun. Plaintiff was not arrested or otherwise detained by police officers.

After he had been discharged by the Defendant, Plaintiff submitted an employment application, for a position as a truck driver, to U.S. Express. Since he had listed Defendant as a former employer, U.S. Express contacted Defendant as part of the application process. The Defendant informed Plaintiff's potential, future employer that it had discharged him because it did not consider him to be a safe truck driver. Plaintiff was not hired by U.S. Express.

In his Complaint,[4] Plaintiff sets forth three claims for relief, to wit: 1) a claim of age discrimination under Ohio law, predicated upon the theories that Defendant transferred him from the position of yard jockey to that of trainee truck driver and that Defendant discharged him because of his age (First Claim for Relief); 2) a claim of defamation per se under the common law of Ohio, predicated upon the assertions that the Defendant falsely stated that he was not a safe truck driver and that he was going to the Elder Beerman Distribution Center with a gun (Second Claim for Relief); and 3) a claim of defamation per quod under the common law of Ohio, predicated upon the same assertions (Third Claim for Relief).[5]

This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. # 12). As a means of analysis, the Court will initially set forth the standards which are applicable to every such motion, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a show-

---

4. Plaintiff initiated this litigation in the Greene County, Ohio, Common Pleas Court, from whence Defendant removed it, on the basis of diversity of citizenship jurisdiction. Plaintiff's Complaint is attached to Defendant's Notice of Removal (Doc. # 1).

5. Plaintiff also set forth claims of promissory estoppel and unjust enrichment in his Complaint. He has, however, dismissed those claims with prejudice. *See* Doc. # 11.

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v.*

*J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6 th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6 th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to

believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With its motion, Defendant seeks summary judgment on all three of Plaintiff's remaining claims. As a means of analysis, the Court will initially rule upon the Defendant's motion as it relates to Plaintiff's age discrimination claim, following which it will turn to his defamation claims, discussing them together.

### 1. Age Discrimination (First Claim for Relief)

Plaintiff has set forth a claim of age discrimination under Chapter 4112 of the Ohio Revised Code, predicated upon the theories that Defendant transferred him from the position of yard jockey to that of trainee truck driver and that Defendant discharged him because of his age. As a means of analysis, the Court will initially set forth the legal standards by which a claim of age discrimination in violation of Chapter 4112 is resolved.

■ The Ohio Supreme Court has held that the familiar burden shifting approach, established in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), must be applied when resolving claims of age discrimination under Ohio law. *See e.g., Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 803 N.E.2d 781 (2004); *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996); *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983). *Accord Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir.2002). In *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Cir.1999), the Sixth Circuit reviewed the *McDonnell Douglas* framework, which, in the absence of direct evidence of discrimination,[6] is applicable to claims of age discrimination, to wit: 1) the plaintiff initially must establish the elements of a prima facie case of discrimination; 2) if the plaintiff meets that requirement, the burden of production shifts to the defendant to articulate a non-discriminatory reason for taking the employment

---

6. Direct evidence of discrimination has been defined as " 'evidence that proves the existence of a fact without requiring any inferences.' " *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir.2005) (quoting *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 548 (6th Cir.2004)). Herein, Plaintiff has not presented direct evidence of discrimination.

action in question; and 3) if the defendant meet its burden of production, the burden shifts to the plaintiff to prove, by the preponderance of the evidence, that the defendant's articulated reason is a pretext for discrimination.[7] *Id.* at 371. In *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 803 N.E.2d 781 (2004), the Ohio Supreme Court, in ¶ 1 of the syllabus, set forth the elements of a prima facie case of age discrimination under Ohio law:

> 1. Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of [Chapter 4112] in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. (*Kohmescher v. Kroger Co.* [1991], 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus, modified and explained.)

*Accord Cassel v. Schuster Electronics, Inc.*, 159 Ohio App.3d 224, 228 823 N.E.2d 519, 522 (2004); *Stair v. Phoenix Presentations, Inc.*, 116 Ohio App.3d 500, 508, 688 N.E.2d 582, 587 (1996).[8] Of course, when an age discrimination claim arises out of some action other than the discharge of an employee, the plaintiff need only establish that he suffered an adverse employment action, in order to establish the second element of the prima facie test. *Molnar v. Klammer*, 2005 WL 3528870 (Ohio App. 2005); *Jelinek v. Abbott Laboratories*, 164 Ohio App.3d 607, 620, 843 N.E.2d 807, 817 (2005). Ohio courts have recognized, as

has the Sixth Circuit, that the fourth element of the prima facie case of discrimination can be replaced with proof that a comparable person, outside the protected class, was treated better than the plaintiff. *Blanton v. Cuyahoga County Bd. of Elections*, 150 Ohio App.3d 61, 66, 779 N.E.2d 788, 793 (2002); *Smith v. Goodwill Industries of the Miami Valley, Inc.*, 130 Ohio App.3d 437, 443, 720 N.E.2d 203, 207 (1998); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir.2002); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–583 (6th Cir. 1992).

■ As is indicated, if the plaintiff makes out a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a nondiscriminatory reason for taking the adverse employment action. If the defendant meets its burden in that regard, the plaintiff must then establish pretext. In *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir.1994), the Sixth Circuit discussed the methods by which a plaintiff can establish pretext:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and con-

---

7. Of course, since this litigation comes before the Court on the Defendant's Motion for Summary Judgment (Doc. # 12), Plaintiff need only raise genuine issues of material fact concerning the elements of his prima facie case of age discrimination.

8. In ¶ 2 of the syllabus, the *Coryell* court held that "[t]he term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." 101 Ohio St.3d at 175, 803 N.E.2d at 783.

sists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." [*Anderson v.] Baxter Healthcare*, 13 F.3d [1120, 1123–24 (7th Cir. 1994)]. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *Hicks*, 509 U.S. at [511], 113 S.Ct. at 2749. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's *prima facie* case.

The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.

*Id.* at 1084 (emphasis in the original). *Accord Sweet v. Abbott Foods, Inc.*, 2005 WL 3528785 (2005); *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 772–773, 729

N.E.2d 1202, 1211 (1998); *Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506 (6th Cir.2003).

■ Defendant initially argues that it is entitled to summary judgment on Plaintiff's claim that he was discharged because of his age, in violation of Chapter 4112, given that the evidence fails to raise a genuine issue of material fact on the fourth element of Plaintiff's prima facie case of age discrimination. Stated somewhat differently, Defendant contends that the evidence fails to raise a genuine issue of material fact as to whether Plaintiff was replaced by a substantially younger person, after being discharged from his position as a trainee truck driver, or whether a substantially younger person was treated more favorably than he. This Court agrees. The evidence before the Court, the depositions of Fidler and Truitt and the Defendant's Answers to Plaintiff's Interrogatories, demonstrates that Defendant has not hired anyone to fill Plaintiff's position as a truck driver trainee. Moreover, Plaintiff has not even argued that Defendant treated a substantially younger person more favorably, let alone presented evidence in support of such a proposition. Accordingly, the Court concludes that Defendant is entitled to summary judgment on the aspect of Plaintiff's First Claim for Relief which is predicated on the theory that Defendant discharged him because of his age, in violation of Chapter 4112.

■ Even if the evidence raised a genuine issue of material fact of that element of the prima facie case of age discrimination on the termination aspect of this claim, the Court would nevertheless conclude that Defendant is entitled to summary judgment on same, because it agrees with Defendant's assertion that it has met its burden of articulating a non-discriminatory reason for discharging Plaintiff and the

evidence fails to raise a genuine issue of material fact on the question of pretext. Defendant has unquestionably met its burden of production concerning a non-discriminatory reason for discharging the Plaintiff, given that it has supplied evidence that it took that action because he was an unsafe truck driver. Accordingly, the Court turns to the question of whether the evidence raises a genuine issue of fact on pretext.

In essence, Plaintiff relies upon the factually false prong of the *Manzer* test, in arguing that the Defendant's stated reason for discharging him was a pretext for age discrimination. For instance, he points to his own deposition testimony to the effect that Truitt assured him that he was doing a good job and that he (Truitt) never gave him (Plaintiff) negative feedback about the safety of his driving or pointed out a need for improvement. Moreover, Plaintiff testified during his deposition that he was not given an explanation for his discharge other than he had been fired for unspecified safety reasons. Plaintiff does not, however, challenge that Truitt filed a report with his supervisors, setting forth his (Truitt's) observations of Plaintiff's driving habits that he (Truitt) deemed to be unsafe.[9] Plaintiff does, however, disagree with Truitt's assessment of his safety as a driver and so testified during his deposition. As a consequence, Plaintiff states that the issue of pretext raises a question of credibility, to wit: a jury must decide whether to believe Truitt's or Plaintiff's assessment of his safety as a driver. The Court accepts that there is a genuine issue of material fact as to whether Plaintiff is or is not an unsafe driver. It cannot, however, conclude that this fact question means that

there is a genuine issue of material fact concerning pretext.

In *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001), the Sixth Circuit discussed the burden upon a discrimination plaintiff to show that the evidence raises a genuine issue of material fact on pretext, when he or she challenges the factual support for the defendant's decision:

> Accordingly, the plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action. *See Smith v. Chrysler*, 155 F.3d 799, 806–07 (6th Cir. 1998) (citing *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996) ("[I]f the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.")).

In order to determine whether the defendant had an "honest belief" in the proffered basis for the adverse employment action, this Court looks to whether the employer can establish its "reasonable reliance" on the particularized facts that were before it at the time the decision was made. *See Smith*, 155 F.3d at 807. In *Smith v. Chrysler*, this Court provided some guidance in determining whether reasonable reliance was present. We stated:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key

---

9. For instance, Truitt reported to his superiors that Plaintiff had problems driving in the proper lane and backing up the truck, that he would become visibly nervous and panic when required to drive in traffic and that he refused to drive in large cities.

inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

*Id.*

If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Id.* at 493–94. Herein, like the plaintiff in *Braithwaite,* the Plaintiff has not provided evidence which would indicate that the Defendant did not honestly believe Truitt's assessment that Plaintiff was not a safe driver. As indicated in *Smith v. Chrysler,* 155 F.3d 799 (6th Cir.1998), a defendant has an honest belief, only if it reasonably relied upon particularized facts. *Id.* at 807. Herein, Truitt did not merely tell his supervisors that Plaintiff was an unsafe driver. Rather, Truitt supplied to Defendant his particularized observations of what he deemed to be Plaintiff's shortcomings as a driver. Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact on the question of whether the stated reason for discharging the Plaintiff, that he was an unsafe truck driver, was a pretext for age discrimination.

■ In addition, Defendant argues that it is entitled to summary judgment on the aspect of Plaintiff's First Claim for Relief which is predicated upon the theory that Defendant transferred him from the position of yard jockey to that of trainee truck driver because of his age. In particular, Defendant contends that it has met its obligation of articulating a non-discriminatory reason transferring Plaintiff and that the evidence fails to raise a genuine issue of material fact concerning pretext.[10] It cannot be questioned that the Defendant has met its burden of production, given that it has produced evidence that it transferred Defendant because he was incapable of backing up trucks and he could not keep up with the fast pace in the truck yard at the Elder Beerman Distribution Center.

Turning to the question of whether the evidence raises a genuine issue of material fact concerning pretext, the Plaintiff points to his deposition testimony to the effect that Defendant failed to explain to him the reasons for transferring him, that he was given only one-half day of training and that his trainer never criticized him, told him that he was not doing the job quickly enough or gave him negative feedback.[11] Simply stated, although those shortcomings may demonstrate that Defendant is a less than ideal employer, they do not remotely suggest that the stated reasons for transferring Plaintiff, i.e., that he was incapable of backing up trucks and could not keep up with the fast pace in the truck yard, are a pretext for age discrimination.

Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact concerning the question of whether Defendant's stated reasons for transferring Plaintiff were a pretext for age discrimination.

---

10. Defendant has failed to argue that it is entitled to summary judgment, because the transfer did not constitute an adverse employment action.

11. Plaintiff also argues that he denied any problems performing his duties as a yard jockey during his deposition. *See* Doc. # 17 at 13–14. However, such a denial does not appear on page 71 of Plaintiff's deposition, the page cited by Plaintiff in support of that assertion, or on the surrounding pages.

Based upon the foregoing, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 12), as it relates to Plaintiff's First Claim of Relief, a claim of age discrimination under Chapter 4112.

### 2. Defamation Claims

As is indicated, Plaintiff has set forth claims defamation per se and pre quod. Those claims are based upon statements of by Defendant's employees that Plaintiff was not a safe truck driver and that it had received a telephone call indicating that Plaintiff was going to the Elder Beerman Distribution Center with a gun. As a means of analysis, the Court initially reviews the legal standards which govern claims of defamation per se and defamation per quod under the Ohio common law.

In *McCartney v. Oblates of St. Francis de Sales*, 80 Ohio App.3d 345, 609 N.E.2d 216 (1992), the Court discussed in detail the tort of defamation under Ohio law:

> Defamation is the unprivileged publication of a false and defamatory matter about another. *McCarthy v. Cincinnati Enquirer, Inc.* (1956), 101 Ohio App. 297, 1 O.O.2d 131, 136 N.E.2d 393. A defamatory statement is one which tends to cause injury to a person's reputation or exposes him to public hatred, contempt, ridicule, shame or disgrace or affects him adversely in his trade or business. *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145, 486 N.E.2d 1220, 1222. *See, generally*, Restatement of the Law 2d, Torts (1977) 156, Section 559. Slander consists of oral defamatory statements. Restatement of the Law 2d, Torts, supra, at 177, Section 568. There are two actionable types of slander: slander per se and slander per quod. *Rainey v. Shaffer* (1983), 8 Ohio App.3d 262, 264, 8 OBR 354, 356, 456 N.E.2d 1328, 1331. Slander per quod is defined as slander determined by the interpretation of the listener, through innuendo, as between an innocent or harmless meaning and a defamatory one. *Rainey, supra. See, also, Becker v. Toulmin* (1956), 165 Ohio St. 549, 556, 60 O.O. 502, 505, 138 N.E.2d 391, 397 (distinguishing libel per se from libel per quod). Slander per se means that the slander is accomplished by the very words spoken. *Rainey* and *Becker.* In order for an oral defamatory remark to be considered slander per se it must consist of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation. *See Schoedler v. Motometer Gauge & Equip. Co.* (1938), 134 Ohio St. 78, 84, 11 O.O. 487, 490, 15 N.E.2d 958, 960. *See, generally*, Restatement of the Law 2d, Torts, supra, Section 570. The determination of whether a statement is slander per se or slander per quod is a question of law for the trial court. *Matalka, supra.* Depending on this determination the defamation action will be either per se or per quod. *Fish v. Heatherdowns Country Club Assn.*, Lucas App. No. L–90–072, 1991 WL 97324 (Ohio App.June 7, 1991) unreported, 1991 WL 97324. If the statements are deemed to be actionable per quod, the plaintiff must allege and prove damages. *Becker, supra*, at paragraphs three and four of the syllabus. If the statements are found to be actionable per se, both damages, *id.*, 165 Ohio St. at 553, 60 O.O. at 504, 138 N.E.2d at 395, and actual malice, *Westropp v. E.W. Scripps Co.* (1947), 148 Ohio St. 365, 35 O.O. 341, 74 N.E.2d 340, paragraph four of the syllabus, are presumed to exist. *See, also, Fish, supra.* Only where the court determines that the words in the published statement are ambiguous and

that a defamatory meaning may be reasonably understood by innuendo does the trier of fact determine whether, in fact, the defamatory meaning was understood. *Becker, supra,* paragraphs one and two of the syllabus; *Matalka, supra.*

Even in cases where a plaintiff has established a prima facie case of defamation, a defendant may invoke the defense of qualified privilege. *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 138, 331 N.E.2d 713, 718. A publication is privileged when it is " 'fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.' " *Id.* at 243–244, 72 O.O.2d at 138, 331 N.E.2d at 718, quoting *Toogood v. Spyring* (1834), 149 Eng. Rep. 1044, 1 Crompton, Meeson & Roscoe 181. As stated by the *Hahn* court, a publication is:

" * * * conditionally or qualified privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect

obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits." (Emphasis omitted.) *Hahn, supra,* 43 Ohio St.2d at 245–246, 72 O.O.2d at 139, 331 N.E.2d at 719.

\*    \*    \*    \*    \*    \*

Where the circumstances of the occasion for the alleged defamatory communication are not in dispute, the determination of whether there is a qualified privilege is a question of law for the trial court. *Mauk v. Brundage* (1903), 68 Ohio St. 89, 67 N.E. 152. *See, also, Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241, 248, 543 N.E.2d 1277, 1283; *Williams v. P.W. Publishing Co.,* 140 N.E.2d 809, 76 Ohio Law Abs. 404 (Ohio App.1957); *Fish, supra; John Hancock Mut. Life Ins. Co. v. Zalay* (Fla.App.1991), 581 So.2d 178; *Soentgen v. Medcenter One, Inc.* (N.D.1991), 467 N.W.2d 73; *Happy 40, Inc. v. Miller* (1985), 63 Md.App. 24, 491 A.2d 1210. *See, generally,* Prosser & Keeton, The Law of Torts (5 Ed.1984) 835, Section 115; Restatement of the Law 2d, Torts, supra, at 316, Section 619(1); 2 Harper, James & Gray, The Law of Torts (2 Ed.1986) 248, Section 5.29; Sanford, Libel and Privacy (2 Ed.1991) 507, Section 10.5.1. Thus, it is only where the content of the defamatory communication and/or the circumstances under which it is published are unclear under the evidence that the question of whether a qualified privi-

lege exists is one for the jury. *See Theiss v. Scherer* (C.A.6, 1968), 17 Ohio Misc. 172, 396 F.2d 646, 650 (the contents of an allegedly defamatory letter and the circumstances surrounding its publication were not in dispute. Privilege was, therefore, a question of law for the court); *Boden v. Anaconda Minerals Co.* (S.D.Ohio 1990), 757 F.Supp. 848, 856 (subjective good faith was factual because defendants failed to establish content of the statement relied on to establish an occasion giving rise to a qualified privilege).

*Id.* at 353–55, 609 N.E.2d at 222–23. In *Knox v. Neaton Auto Products Mfg., Inc.*, 375 F.3d 451, 460–61 (6th Cir.2004), the Sixth Circuit noted that, under the Ohio common law, once a defendant has demonstrated the existence of a qualified privilege, a plaintiff can prevail on a defamation claim only by showing actual malice. *Id.* at 460–61, citing *Evely v. Carlon Co., Div. of Indian Head, Inc.*, 4 Ohio St.3d 163, 447 N.E.2d 1290 (1983). Ohio courts have defined actual malice as "acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609, 610 (1991) (¶ 2 of the syllabus).

■ Defendant argues that it is entitled to summary judgment on these claims, because it is entitled to a qualified privilege and the evidence fails to raise a genuine issue of material fact as to whether it acted with actual malice. As a means of analysis, the Court will initially address the statement to U.S. Express that Defendant did not consider Plaintiff to be a safe truck driver, following which it will turn to Defendant's statements that Plaintiff was going to the Elder Beerman Distribution Center with a gun.

Courts in Ohio have uniformly held that a qualified privilege exists as to communications of an employer concerning the discharge of a former employee to that employee's prospective employer. *See e.g., Johnson v. Lakewood Hospital*, 1997 WL 547968 (Ohio App.1997); *Rinehart v. Maiorano*, 76 Ohio App.3d 413, 421, 602 N.E.2d 340, 346 (1991); *Randleman v. Dick Masheter Ford, Inc.*, 1991 WL 224433 (Ohio App.1991). Given that there is no evidence that the Defendant acted in other than good faith when it informed U.S. Materials that Plaintiff was discharged because he was not considered to be a safe truck driver,[12] the Court concludes that Defendant's statement to U.S. Materials is qualifiedly privileged.

Plaintiff argues that the evidence raises a genuine issue of material fact on the issue of whether Defendant acted with actual malice, when it provided information to U.S. Materials, because it (Defendant) had reasons to doubt the veracity of Truitt. This Court does not agree with Plaintiff concerning the existence of such a genuine issue of material fact. Plaintiff's argument is predicated upon the assertion that Defendant had reasons to doubt Truitt. However, Plaintiff cites only his deposition testimony, wherein he disagreed with Truitt's assessment of his driving skills, to support that assertion. Although that deposition testimony may be sufficient to create a genuine issue of material fact as to the truthfulness of Truitt's report to his employer, it, in and of itself, does not demonstrate that the employer acted with a reckless regard for the truth by believing its employee. If such evidence were

---

**12.** Plaintiff points out that he and Truitt disagree on whether he was a safe driver. That disagreement does not, however, raise a genuine issue of material fact, given that the evidence fails to raise a genuine issue of material fact as to whether Defendant honestly believed that Plaintiff was an unsafe driver.

sufficient to create a genuine issue of material fact as to actual malice, the defense of qualified privilege would effectively be written out of the Ohio common law, since raising a fact question on the truthfulness of a statement would be sufficient to require a jury trial to resolve a defamation claim.

Accordingly, the Court concludes that Defendant is entitled to summary judgment on the aspect of Plaintiff's Second and Third Claims for Relief, arising out of its statement to U.S. Materials.

■ Defendant also argues that it is entitled to summary judgment on the aspects of those claims arising from its statements to the Fairborn Police Department, its employees and the management of Elder Beerman that Plaintiff was going to the latter's Distribution Center with a gun. Defendant contends that a qualified privilege applies to those statements and that the evidence fails to raise a genuine issue of material fact as to whether it acted with actual malice. As an initial matter, the Court will address the question of whether the qualified privilege applies. If the Court concludes that privilege is applicable, it will turn to the question of whether the evidence raises a genuine issue of material fact concerning actual malice.

■ As is indicated, the essential elements of a qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. *McCartney, supra.* Putting aside the question of Defendant's good faith for a moment, it is not and could not be questioned that Defendant an interest to be upheld, the safety of its employees and those of Elder Beerman; that its statements were limited in their scope to that purpose; that the statements were made on a proper occasion, shortly after Defen-

dant received the anonymous telephone call; and that Defendant properly published its statements to proper parties only, i.e., it informed its employees who would be in danger if Plaintiff had gone armed to the Distribution Center, the management of Elder Beerman whose employees would face a similar danger, and the local police department. Consequently, Ohio courts have indicated that reporting suspected or possible criminal behavior to authorities can be qualifiedly privileged. *See e.g., Guerrero v. C.H.P., Inc.,* 2001 WL 931640 (Ohio App.2001); *McGuinness v. Smith,* 1995 WL 63679 (Ohio App.1995); *Paramount Supply Co. v. Sherlin Corp.,* 16 Ohio App.3d 176, 475 N.E.2d 197 (1984). Plaintiff, however, argues that the evidence raises a genuine issue of material as to whether Defendant acted in good faith. Since that argument is indistinguishable from the Plaintiff's assertion that the evidence raises a genuine issue of material fact as to whether Defendant acted with actual malice, the Court will discuss those questions together.

In support of that argument, the Plaintiff points out that Defendant based its statements upon an anonymous telephone call. Plaintiff cites to *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), wherein the United States Supreme Court reversed a libel judgment in favor of the plaintiff, because the plaintiff, a public figure, had failed to prove that the defendant had acted with a reckless disregard for the truth, as required by *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In the course of its decision, the *St. Amant* Court wrote:

The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were

true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*Id.* at 732, 88 S.Ct. 1323 (footnote omitted). In *St. Amant,* the Supreme Court also reiterated that a reckless disregard for the truth is not demonstrated unless the defamation defendant "in fact entertained serious doubts as to the truth of his publication." *Id.* at 731, 88 S.Ct. 1323. Therein, the Supreme Court ruled upon an appeal in a libel action, arising out of a political speech given by the defendant. In that speech, the defendant read questions he had posed to a union member and the member's responses. One of the responses falsely accused the plaintiff, a Louisiana deputy sheriff, of criminal activity. The Supreme Court did not address the question of whether relying on an anonymous telephone call to inform those whose lives may be in danger, if the contents of that telephone call are true, and to advise the local police department about those contents raises a genuine issue of material fact as to the defamation defendant's good faith or reckless disregard for the truth. Consequently, this Court concludes that relying on an anonymous telephone call, in and of itself, to provide warning to those who may be in harm's way and to the police department which could prevent a potentially dangerous situation from becoming deadly, does not raise a genuine issue of material fact as to either good faith or reckless disregard for the truth.

■ Plaintiff also points out that the Defendant did not conduct an investigation into the anonymous telephone call before reporting it. In *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Building & Construction Trades Council,* 73 Ohio St. 1, 651 N.E.2d 1283 (1994), the Ohio Supreme Court, while discussing the question of whether the evidence raised a genuine issue of material fact on the question of actual malice, said that "the failure to investigate before publishing will not defeat a qualified privilege, unless the defendant entertained serious doubts as to the truth of his statements or the veracity or accuracy of his sources." *Id.* at 12–13, · 651 N.E.2d at 1293, citing *St. Amant.* Since the Plaintiff has not cited evidence which would support the conclusion that Defendant entertained serious doubts about its statements or the veracity of the anonymous source, the Court concludes that Defendant's failure to conduct an investigation prior to reporting to authorities, its employees and the management of Elder Beerman that Plaintiff was going to the Elder Beerman Distribution Center with a gun does not demonstrate actual malice.

Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact concerning the aspect of Plaintiff's Second and Third Claims for Relief, arising out of Defendant's reporting of the anonymous telephone call. Thus, summary judgment must be granted on all aspects of Plaintiff's Second and Third Claims for Relief.

Based upon the foregoing, the Court sustains Defendant's Motion for Summary Judgment (Doc. # 12) in its entirety. Judgment is to be entered in favor of Defendant and against Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.