OSTERHAUS, J.
In 2011, the chief executive officer of North Okaloosa Medical Center (NOMC) complained to the hospital’s anesthesia contractor about one of its anesthesiologists. He reported that the doctor was behaving disruptively and the hospital no longer wanted him assigned there. The contractor acted on this complaint and removed the doctor. After being forced to resign, the doctor sued the CEO and the hospital for defamation. After a trial, the jury found the hospital defendants liable for defamation and awarded the doctor compensatory and punitive damages.
The hospital defendants now raise several issues on appeal, one of which requires reversal. The court incorrectly instructed the jury on defamation. To prove defamation in a case like this one, the hospital’s statement to the contractor about its doctor must have been made with “express malice,” which means for the primary purpose of gratifying its ill-will, hostility, and desire to harm the doctor. But the instructions permitted the jury to infer liability on the basis of whether the defendants knew their statement about the doctor was false or made the statement with reckless disregard for the doctor’s rights, irrespective of the defendants’ primary motive. This was an error. See Nodar v. Galbreath, 462 So.2d 803 (Fla.1984); John Hancock Mut. Life Ins. Co. v. Zalay, 581 So.2d 178 (Fla. 2d DCA 1991). And we cannot regard it as a harmless error because the verdict included a special finding that the hospital’s conduct was motivated “solely by unreasonable financial gain” (emphasis added). In other words, the jury did not view malevolence as the primary motive behind the hospital’s conduct as necessary to find it liable for defamation. And so, the error cannot be considered harmless because the jury instruction error appears to have contributed to the jury’s verdict.
I.
In 2008, NOMC contracted with Anesthesia Healthcare Partners of Florida Inc. (AHP) to provide anesthesia services at the hospital. AHP, in turn, contracted with doctors to work at NOMC, including with board certified anesthesiologist Dr. Michael P. Ederer, through his company Coastal Anesthesia, P.A. Dr. Ederer served as an anesthesiologist at NOMC until AHP removed him in 2011.
AHP terminated Dr. Ederer after hospital CEO David Fuller reported complaints about Dr. Ederer cursing at nurses and hospital staff and unnecessarily delaying the surgery of an elderly patient. Mr. Fuller considered Dr. Ederer’s behavior disruptive and no longer wanted him providing anesthesia services at the hospital. Prior to reporting the matter to AHP, the hospital did not investigate the complaints or initiate a discipline process of its own against Dr. Ederer under the hospital’s bylaws or code of conduct. Instead, the hospital merely complained to AHP, which set about terminating Dr. Ederer under a provision of its contract with him addressing hospital requests for removal “due to patient care concerns or disruptive behavior.” AHP ultimately allowed Dr. Ederer to resign in lieu of termination. Meanwhile, although the hospital defendants did not want Dr. Ederer to continue providing its anesthesia services, they did allow him to keep his hospital privileges for the purpose of continuing to provide pain management sendees to his own patients.
A few months after being forced to resign, Dr. Ederer filed suit claiming tor-tious interference with contract, tortious interference with an advantageous business relationship, and defamation. By the time of the trial, only the defamation claim *981 remained against Mr. Fuller and NOMC (the Hospital Defendants). At trial, Dr. Ederer asserted that Mr. Fuller’s statements to AHP and the reports underlying them were uninvestigated by the hospital and false. He argued that the Hospital Defendants’ decision to single him out, after failing to investigate the complaints against him and skipping the disciplinary process established by their bylaws, proved the Hospital Defendants’ intention to maliciously defame him. And he alleged that the Hospital Defendants ruined his career by baselessly labelling him “disruptive,” which is akin to making him wear a scarlet letter in his profession. The Hospital Defendants vigorously contested the allegations, but the jury returned a verdict for Dr. Ederer. It awarded him $1,120,000 in compensatory damages and $1,025,000 in punitive damages. The Hospital Defendants then appealed.
II.
The Hospital Defendants raised four issues in on appeal. Two of them relate to the sufficiency of evidence underpinning the verdict. Another seeks remittitur of the damages. This opinion will only address a fourth issue involving an erroneous jury instruction, which is the basis of our decision to reverse.
A.
Generally speaking, someone who broadcasts a false statement that harms another person’s reputation can be held liable for defamation. The law essentially presumes malevolence on the part of a speaker who says false and harmful things about another person. But that presumption doesn’t apply where parties have a mutual interest in evaluating a person’s work. Of course, evaluative discussions are commonplace. Employees evaluate employers and vice versa; customers evaluate salespeople to store managers; parents evaluate teachers to principals; former bosses evaluate former workers to potential new employers; and so on. This case involves such a conversation. Here, the hospital’s CEO evaluated a doctor’s work and behavior to the contractor that supplied his services to the hospital. Under these circumstances, the law extends a conditional privilege to the speaker and presumes good faith, even when the comments are critical. See, e.g., Zalay, 581 So.2d at 179 (recognizing a privilege in “communications made for bona fide commercial purposes where the interest to be protected is ... business matters where both parties have a corresponding interest in the matter”); Nodar, 462 So.2d at 811 (describing the privilege).
Someone who claims defamation arising from a privileged conversation must prove “express malice” on the part of the speaker. Id. at 810; see also McCurdy v. Collis, 508 So.2d 380, 382 (Fla. 1st DCA 1987). The question of express malice largely turns on whether the speaker intended to harm the plaintiff personally. The Florida Supreme Court described how express malice is proven as follows:
Where a person speaks upon a privileged occasion, but the speaker is motivated more by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position “to gratify his malevolence.”
Nodar, 462 So.2d at 811. See also Zalay, 581 So.2d at 180 (“When the motivation to harm the plaintiff is the purpose of the communication, instead of a desire to pro *982 tect a proper interest, then express malice is proven and the privilege is destroyed.”). The mere fact that a 'statement is untrue and made with knowledge of its falsity, or made recklessly without regard to its truth or falsity-is not the test. Zalay, 581 So.2d at 180 (citing Nodar). See also Loeb v. Geronemus, 66 So.2d 241, 244 (Fla.1953) (stating that “the malice which vitiates a qualified privilege must be ... not merely inferred from falsity, etc.”); Demby v. English, 667 So,2d 350, 353 (Fla. 1st DCA 1995) (“malice cannot be inferred from the fact that some statements are untrue”) (citing Coogler v. Rhodes, 38 Fla. 240, 21 So. 109, 112 (1896)).
B.
In this case, the parties don’t dispute that a conditional privilege attached to the Hospital Defendants’ conversation with AHP. What they do contest is how the trial coürt instructed the jury to resolve the defamation issue in light of the Hospital Defendants’ privilege. Both parties agreed with the part of the defamation instruction taken directly from the Standard Civil Jury Instructions:
The issue for you to decide is, therefore, whether ... North Okaloosa Medical Center and David Fuller made the statement with improper motives, abusing [their] privilege.
One makes a false statement about another with improper motives if the person’s primary motive and purpose in making the statement is to gratify his ill will, his hostility, and his intent to harm the other, rather than to advance or protect himself and his employer’s interests, right or duty to speak to AHP on the subject of Dr. Ederer’s employment.
See Fla. Std. Jury Instr. (Civ.) 405.9. But they didn’t agree on the rest of the. instruction.. Over Hospital Defendants’ objection, Dr. Ederer insisted on this additional language, which the court permitted, allowing the jury to overcome the hospital’s privilege and find defamation in other ways: ■ ¡
If reasonable bounds are exceeded in making this communication or if the communication be made knowing it to be false, malice may be inferred, which would destroy any privilege.
Malice also exists where the false publication was made with such gross and reckless negligence as to amount to actual malice, or the false publication was made with reckless disregard to the plaintiffs’ rights, or false publication was made with moral turpitude, or the false publication was made under circumstances as to be outrageous.
These additional instructions permitted the jury to overcome the hospital’s privilege to evaluate Dr. Ederer to AHP without considering the Hospital Defendants’ primary motive for its statement. And we must reverse because of the error.
The same thing occurred in Zalay. There, a former employee brought a libel and slander action against his former company and won a big verdict in a case that also required the plaintiff to prove express malice. The jury instructions allowed the jury to overcome the privilege and return a verdict for the plaintiff without determining whether the defendant’s statements were primarily intended to gratify its malevolence. That instruction said:
It is malicious to make a false statement concerning another with knowledge of its falsity or to make such a statement recklessly and without regard for its truth or falsity or to make a statement concerning another for the primary purpose of injuring the other.
Zalay, 581 So.2d at 180. The Second District rejected this express malice instruction and means of overcoming the- defen *983 dant’s conditional privilege for a couple of reasons. ■
First, the instruction above allows the jury to find that [the defendant] acted with express malice if it found that [the defendant] -knew the statements .to be false_
Second, the instruction allows the jury to find that [the defendant] forfeited the privilege if it acted in disregard of whether the statements were false. Again, there is no authority for the jury to make their decision on this one element. This element goes to actual malice, not express malice. Nodar, 462 So.2d at 807.
Id. On this basis, the court reversed and remanded the case, concluding that the instruction “incorrectly apprised the jury of the grounds on which they could find that the statements were made with express malice.” Id.
Dr. Ederer argues that Zalay is wrong and defends the instructions based on the Florida Supreme Court’s decision in Abraham v. Baldwin, 52 Fla. 151, 42 So. 591 (1906), and the trade libel case, Collier County Publ’g Co. v. Chapman, 318 So.2d 492 (Fla. 2d DCA 1975). In Abraham, the plaintiff sued after the defendant had called him a thief “in the presence and hearing of divers persons.” In that context, the court said that malice might be inferred “if reasonable bounds were exceeded in making .the statement, or if the statement was made knowing it was false.” Abraham, 42 So. at 594. This case, however, doesn’t similarly involve a widely published statement. See Healy v. Suntrust Serv. Corp., 569 So.2d 458, 460 (Fla. 5th DCA 1990) (citing Abraham and noting that a qualified privilege vanishes if the statement is made to too wide an audience). Furthermore, the Florida Supreme Court has long held, both before and after Abraham, that a qualified privilege isn’t overcome by the simple fact that a defendant makes a false statement, or disregards its truth. See Coogler, 21 So. at 112; Loeb, 66 So.2d at 244; Nodar, 462 So.2d at 807.
The bottom line is that to overcome the privilege, find express malice, and hold the defendants liable for defamation, the jury had to decide that the Hospital Defendants made the false statement with the primary motive of gratifying ill will, hostility, and their desire to harm the plaintiff. That the Hospital Defendants said knowingly false things about Dr. Ederer, or recklessly disregarded his rights, didn’t necessarily mean that that they were motivated by personal hostility against him. In fact, the jury’s verdict found that the wrongful conduct arose “solely” from an economic motivation, not malevolence.[1] And so,' while evidence that the hospital said knowingly false things, or said things with a reckless disregard for a plaintiffs rights may be relevant to a jury’s consideration of the ultimate question, it was wrong to give instructions permitting it to base its defamation verdict upon something other than the Hospital Defendants’ primary motive.
Finally, Dr, Ederer’s fallback argument is that any jury instruction error was harmless because the punitive damages instruction told the jury they could only find punitive damages if the “primary purpose in making this statement was to indulge ill will, hostility, and intent to harm Dr. Ed-erer.” But his description of the punitive damages instructions isn’t complete. Another part of these instructions told the jury that they could award punitive damages based upon gross negligence. And, *984 furthermore, the jury’s verdict included a special finding that the Hospital Defendants’ conduct was motivated by something altogether different than malevolence against the doctor. By deciding that the Hospital Defendants were motivated solely “by unreasonable financial gain,” the verdict flatly contradicted what the jury had to determine to overcome the defendants’ privilege on the defamation claim. We cannot find the jury instruction error to be harmless under these circumstances. See Special v. W. Boca Med. Ctr., 160 So.3d 1251, 1253 (Fla.2014) (noting that for an error to be considered harmless “the beneficiary of the error must prove that there is no reasonable possibility that the error complained of contributed to the verdict”).
III.
Accordingly, we REVERSE and REMAND and grant Appellants’ request for a new trial.
WOLF and LEWIS, JJ., concur.

. The punitive damages verdict in this case included a special finding attributing the Hospital Defendants’ wrongful conduct “solely [to] unreasonable financial gain.”